

**ORDERED in the Southern District of Florida on January 7, 2019.**

**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                              Case No.: 18-10307-BKC-MAM

ERIK MARTINEZ,                          Chapter 7

      Debtor.

_____/

**ORDER SUSTAINING TRUSTEE'S OBJECTION TO CLAIMED**
**HOMESTEAD EXEMPTION [ECF NO. 117]**

    **THIS MATTER** came before the court upon Trustee*'s Objection to Claimed*

*Homestead Exemption* (ECF No. 117) (the "Objection") and the memorandum of law

(ECF No. 143) (the "Memorandum") in support thereof filed by the chapter 7 trustee

("Trustee"). On September 5, 2018, the court conducted an evidentiary hearing (the

"Evidentiary Hearing") on the Objection and took the matter under advisement. The

primary issue in dispute is whether the above-captioned debtor ("Debtor") should receive the benefit of the homestead exemption provided by Article X, § 4(a)(1) of the Florida Constitution (as made applicable in this bankruptcy case by 11 U.S.C. § 522(b) and Florida Statutes §§ 222.01 and 222.02), despite having rented the subject property to a tenant for approximately two-and-a-half years prior to the petition date in this bankruptcy case.

## PROCEDURAL HISTORY

Prepetition, Debtor owned a single-family residential property located at 1111 SW 18th Street, Boca Raton, Florida (the "Property"). *See* ECF Nos. 31 and 35. Debtor filed for chapter 7 relief on January 9, 2018 (the "Petition Date") but failed to timely file his schedules and statements of financial affairs. In response, Trustee filed a motion to compel Debtor to file all required documents and sought to prevent automatic dismissal of the case. *See* ECF No. 11 (the "Motion to Avoid Dismissal"). The court granted the Motion to Avoid Dismissal, and also granted Trustee's request to compel Debtor to file schedules of assets and liabilities and a statement of financial affairs, as well as to appear at a § 341 meeting of creditors. *See* ECF No. 27.

On February 21, 2018, Debtor finally filed his initial Schedules of Assets and Liabilities and Statement of Financial Affairs (ECF No. 31), and later amended his initial filing on March 1, 2018 (ECF No. 35) (collectively, the "Schedules and Statements").

Consistent with his prior uncooperative stance regarding disclosure, Debtor's

2

Schedules and Statements provided incomplete and often contradictory information. In Schedule A/B, Part 1, Debtor listed the Property which is a single-family home, and valued the Property at $550,000. In Schedule C, Debtor claimed $480,000 of the value of the Property as exempt under Fla. Const. Article X, §4(a)(1) and Fla. Stat. Ann. §§ 222.01 and 222.02. In Schedule D, Debtor listed Caliber Home Loans ("Caliber") as a secured creditor holding an undisputed lien against the Property in the amount of $606,814.25. In his Statement of Intention, however, Debtor failed to list <u>any</u> secured creditor or mortgage debt, and thereby failed to confirm to the court, Trustee, and creditors of his intention as of the Petition Date.[1]

Debtor also checked "no" to the questions contained in Schedule A/B at Item No. 30 ( "Other amounts someone owes you"), Item No.33 ("Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment"), Item No. 34 ("Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims"), Item No. 35 ("Any financial assets you did not already list"), and Item No. 53 ("Do you have other property of any kind you did not already list?"). None of these responses adequately addresses the situation leading to the Evidentiary Hearing, i.e. Debtor's long-term lease of the Property to an unrelated tenant in exchange for a substantial cash payment.

---

[1] The Statement of Intention did not clarify whether Debtor intended to redeem the Property, enter into a reaffirmation agreement, or surrender the Property to Caliber. Instead, the Statement of Intention only addressed disclosure as to the Overlook Point Lease (defined *infra*). Because Debtor's equity interest in the Property was (according to his own disclosures) less than the amount of the existing loan, parties in interest required clarification as to whether the Debtor intended to retain or to surrender the Property.

In Schedule G, Debtor listed one residential lease with Overlook Point for property located at 4611 N. Federal Highway, Deerfield Beach, Florida 33441 (the "Overlook Point Lease"). Debtor failed to disclose any other executory contract or unexpired lease on Schedule G, including any unexpired lease of the Property. In both his initial Schedule I (ECF No. 31) and his amended Schedule I (ECF No. 157, stricken at ECF No. 175), Debtor stated that he receives no income from rental property. Moreover, Debtor indicated that he has no income at all to report. Again, Debtor's disclosure was both misleading and inaccurate.[2]

In his initial Schedule J (ECF No. 31), Debtor listed monthly rental or home ownership expenses of $1,700, which Debtor testified at a Rule 2004 examination is the rental amount he remits to Overlook Point. *See* ECF No. 194 at 107. Debtor also indicated in Schedule J that he does not pay any real estate tax debt or home maintenance, repair, and upkeep expenses, nor does he remit any monthly mortgage payments.[3]

Question 2 of Debtor's Statement of Financial Affairs required Debtor to provide prior addresses for the three years preceding the Petition Date. He provided the following addresses and occupancy dates:

---

[2] This disclosure conflicts with Debtor's testimony at the Evidentiary Hearing regarding receipt of rental income and, when accepted as true, undermined Debtor's bid to convert the Bankruptcy Case to a case under chapter 13.

[3] This disclosure conflicts with Debtor's testimony at the Evidentiary Hearing that he performs (and pays for) routine maintenance at the Property. *See* Transcript at 189:10-190: 15.

5840 46th Manor, Pompano Beach, Fl 33076 from December 2016 – June 2017

2160 SE 4th Court, Deerfield Beach Fl 33441 from June 2017 – December 2018[4]

550 River Oak Lane, Deerfield Beach, Fl 33441 from January 2016 – December 2016

1111 SW 18th Street Boca Raton Fl 33486 from 2000 – December 2015.

Questions 4 and 5 of the Statement of Financial Affairs required Debtor to disclose any income from operating a business or from other sources within the current year or the two calendar years preceding the Petition Date. In his responses, Debtor represented that he had no such income.[5]

Question 23 of the Statement of Financial Affairs required Debtor to answer the question: "Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone." Debtor checked the box to indicate his answer was "No".

After Debtor failed to appear at a properly-noticed Rule 2004 examination (the "2004 Examination"), upon further motion of Trustee, the court granted Trustee's request to compel Debtor to appear at a rescheduled 2004 Examination and provide further documentation regarding various disputed assets. *See* ECF Nos. 47, 70, 72, and 74. Nonetheless, in a pattern that has repeated itself throughout this bankruptcy

---

[4] The date of December 2018 appears to have been a typographical error given that the Petition Date occurred in January 2018 and the Schedules and Statement of Financial Affairs were filed in February 2018.

[5] This disclosure is inconsistent with the Debtor's testimony at the Evidentiary Hearing and is refuted by record evidence. *See, e.g.,* Trustee's Exhibit 6.

case (the "<u>Bankruptcy Case</u>"), Debtor ignored the court's order by failing to timely cooperate with Trustee's request to provide documentation and by failing to appear at the scheduled 2004 Examination. These failures resulted in Trustee filing a motion to compel Debtor to appear at the 2004 Examination and for sanctions against Debtor, which the court granted. *See* ECF Nos. 77 and 111.

Approximately one month later, Debtor, who had by then retained new counsel, filed a motion to dismiss the Bankruptcy Case or, in the alternative, to convert the Bankruptcy Case to a case under chapter 13 of the Bankruptcy Code. *See* ECF No. 104 (the "<u>Motion to Convert</u>"). Debtor ultimately appeared for a rescheduled 2004 Examination on June 22, 2018. On July 20, 2018, the court denied the Motion to Convert based upon findings that (i) Debtor's schedules and Statements reflected that he earned no income, and (ii) Debtor had failed to demonstrate good faith or, in the alternative, an absence of bad faith sufficient to justify conversion to chapter 13. The court held that Debtor was therefore ineligible to convert his chapter 7 Bankruptcy Case to a case under chapter 13.  Debtor had also requested dismissal of the Bankruptcy Case, which the court denied due to the existence of numerous creditor claims that were filed in the Bankruptcy Case, as well as significant chapter 7 administrative claims which arose in large part from Debtor's failure to timely fulfill his obligations as a debtor under the Bankruptcy Code. *See* ECF No. 166.

Based upon Debtor's continued recalcitrance in producing all requested documents, Trustee later filed a second motion to compel (ECF No. 172) (the "<u>Second</u>

<u>Motion to Compel</u>") on August 3, 2018. The parties resolved the Second Motion to Compel by agreed order (ECF No. 187), and all parties attended the Evidentiary Hearing on Trustee's Objection on September 5, 2018.

At the Evidentiary Hearing, both parties presented extensive arguments and evidence on the issue of Debtor's alleged entitlement to a homestead exemption in the Property. The court took the matter under advisement and, in the interim, requested proposed findings of fact and conclusions of law from counsel. Having reviewed the complete record, including all briefing by both parties and all pertinent factual evidence, the court issues this Order sustaining the Objection.

## BACKGROUND

The facts of this case test the limits of homestead protection, and neatly straddle the line between homestead status and abandonment. Effective August 1, 2015, Debtor leased the Property for a one-year term to Leila Barros ("Barros"), who remained the current tenant as of the date of the Evidentiary Hearing (over three years later). The lease continued on a month-to-month basis after the initial term ended, pursuant to a month-to-month addendum dated July 26, 2016. *See* Trustee's Exhibit 4, at p. 20.

On September 17, 2016, Debtor and Barros entered into a purchase and sale agreement for the Property (the "<u>PSA</u>"), with an anticipated closing date of on or before October 1, 2017. *See* Trustee's Ex. 5. Debtor disclosed in a separate written agreement with Barros that the Property was the subject of a pending foreclosure

action brought by Bank of America, and the parties agreed that the closing under the PSA would occur within 30 days of Barros' receipt of a closing notice from Debtor confirming that he could convey marketable title to the Property. Pursuant to the terms of a separate Security and Occupancy Agreement, Debtor applied the $75,000 lump sum payment received from Barros as the down-payment under the PSA to her rental obligation in the monthly amount of $3,500, pending closing of the PSA. *See* Trustee's Ex. 6 (Security and Occupancy Agreement, dated September 18, 2016; the "Agreement"). Barros recorded a mortgage against the Property to provide her with collateral security for the down-payment she remitted to Debtor. *See* Trustee's Ex. 6.

Based upon these documents, it is clear that Debtor and Barros contemplated a sale of the Property as early as September 18, 2016. *Id.* Debtor testified that he intended to transfer his existing homestead exemption to a new residential property located at 550 River Oak Lane, Deerfield Beach, Florida (the "River Oak Property"). *See* Transcript of Evidentiary Hearing (the "Transcript")*,* ECF No. 205, at 102:23-24 ("Well, once I purchased a new home, my homestead would go to that new home."). However, during the nearly one and one-half year period between the execution of the Agreement and the Petition Date, it appears that Debtor's circumstances changed multiple times.

Initially, at the time of entry into the Agreement, Debtor testified that he intended to purchase the River Oak Property with his then-fiancé, Crystal Goodwin, and had already entered into a contract to do so under which Debtor paid $100,000

as a down payment to the seller of the River Oak Property.[6] For reasons not relevant to the court's present determination, the sales contract on the River Oak Property did not close.[7] Debtor testified that he nonetheless moved into and resided in the River Oak Property but, due to the seller's failure to obtain clear title, he eventually moved out after approximately one year. In addition (and the record is not completely clear on this point), it appears that Debtor and Goodwin ultimately decided not to share a home.

Over the course of the next approximately twelve to eighteen months, Debtor testified that he lived in a few different places under short-term leases of approximately seven months each while waiting for the Property to become available. His hesitation to issue a notice terminating Barros' tenancy of the Property was based largely upon his inability (or unwillingness) to refund the $75,000 previously paid by Barros as a down payment in connection with her purchase of the Property. In sum, Debtor testified that it was initially his intention to provide clear title to the Property to Barros, sell the Property to her, purchase the River Oak Property, and ultimately designate the River Oak Property his homestead. Having failed to obtain clear title on the River Oak Property and having failed to obtain clear title to the Property,[8] he testified that he decided instead to "wait out" the period until Barros' deposit was

---

[6] Transcript at 102:25-106:11.

[7] Transcript at 68:2-69:8.

[8] Debtor testified that the Property has been (and remains) the subject of a pending foreclosure action for a number of years.

exhausted in the form of monthly rent.

Debtor also testified that, during Barros' tenancy at the Property, he and his son routinely visited the Property to pick up Debtor's mail and perform routine maintenance. Debtor claimed that he maintains certain of his personal property at the Property, including pictures on the walls, Debtor's dogs' dog houses in the yard, home furnishings, and other personal effects.[9] Both Debtor and Barros acknowledged that it has been Debtor's practice throughout Barros's tenancy to periodically access the garage to retrieve or store personal items.

Despite Debtor's testimony that he always intended to maintain homestead status at the Property, he nonetheless neglected to ensure that the Property retained its homestead designation for property tax purposes. Debtor testified that, for the tax years 2016 and 2017, the lender paid the property taxes on the Property.[10] Debtor asserted that if he ultimately prevailed in the pending foreclosure action, he would never need to pay property taxes for those years, as the lender had already paid them.[11] Property tax records clearly reflect that Debtor did not receive the benefit of the homestead property tax exemption for tax years 2016 and 2017.[12]

Barros also testified at the Evidentiary Hearing regarding her continued

---

[9] Transcript p. 111:22-113:2; 193:14-15.

[10] Transcript p. 134:12-135:15.

[11] *Id.*

[12] *See* Trustee's Exhibit 14 (composite exhibit of tax notices).

occupancy of the Property pursuant to the lease with Debtor. Barros asserted that she had no agreement with Debtor to reside in or store any of his personal property at the Property, and as far as she was aware, neither Debtor nor his son ever resided at the Property during her tenancy.[13] Even after the Petition Date, Barros continued to be willing to close on the purchase of the Property.[14] In that respect, Barros and Debtor agreed that a closing of the sale of the Property could have occurred as late as June 30, 2018, so long as Debtor could obtain clear title to the Property to convey to Barros.[15]

Not only was Debtor willing to sell the Property to Barros after the Petition Date, he also proposed to further extend the lease of the Property beyond June 30, 2018, so long as Barros paid Debtor the sum of $48,000 as an advance payment of rent. When Barros balked at the large amount demanded by Debtor in January 2018 (shortly after the Petition Date) to extend the lease of the Property, Debtor and Barros discussed a lower amount of $24,000 to extend the lease beyond June 30, 2018.[16] Ultimately, Barros concluded that the sum was too large, and Debtor's legal ability to extend the lease of the Property beyond the Petition Date was too uncertain,

---

[13] Transcript at 139:23-140:18.

[14] Transcript at 149:1-7.

[15] Transcript at 159:12-160:14.

[16] Transcript at 178:25-179:4 and 181:14-183:19.

based upon the advice of her counsel.[17] Debtor admitted that he had made an offer to Barros to extend her lease beyond June 30, 2018, but claimed that he made the offer only to be nice to Barros.[18]

## ANALYSIS

All these admittedly convoluted facts illustrate the complexity of the court's analysis with respect to Debtor's homestead exemption. Certain aspects of Debtor's testimony weigh in favor of a determination that Debtor maintained homestead status as to the Property but, unfortunately, the court found Debtor's credibility to be highly questionable. The court therefore cannot lend full credence to Debtor's testimony and must analyze the record in light of existing law with a clear understanding of precisely which party bears the burden of proof, and why.

Article 10, Section 4 of the Florida Constitution provides:

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
> (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the

---

[17] Transcript at 181:14-183:9.

[18] Transcript at 191:9.

exemption shall be limited to the residence of the owner or
the owner's family . . . .

It is well-settled that a court must liberally construe the homestead exemption
in favor of the claimant. *Tramel v. Stewart,* 697 So.2d 821, 824 (Fla. 1997). The
threshold requirements for a claim of homestead status are twofold: intent to reside
coupled with actual residence. *In re Wiley*, 570 B.R. 661, 668-69 (Bankr. N.D. Fla.
2016); *In re Bennett* 395 B.R. 781, 789 (Bankr. M.D. Fla. 2008) (quoting *Hillsborough
Inv. Co. v. Wilcox*, 152 Fla. 889, 13 So.2d 448, 452 (1943)). In practice, courts typically
view these two requirements as comprising two independent, yet equally important,
tests. *Wiley*, 570 B.R. at 669.

The first test is subjective and looks to the perceived intent of the claimant to
reside permanently in the subject property as evidenced through the claimant's
actions. *Id.* Because intent is often difficult to prove through testimonial evidence
(and such testimony may be unavoidably self-serving, as Debtor's was in this
Bankruptcy Case), courts often look to documentary evidence in the form of driver's
license registration, voting registration, mail delivery, and other similar discrete
indicators of continued intent to reside at the property claimed as homestead. *See,
e.g., In re Lloyd*, 394 B.R. 605, 610-12 (Bankr. S.D. Fla. 2008). By contrast, the second
test, proof of actual residence, generally follows a more straight-forward analysis.
*See, e.g.*, *Lanier v. Lanier*, 116 So. 867, 868 (Fla. 1928) (discussing historical status of
subject property as the homestead). Although reference to the same extrinsic markers
may be mandated in a handful of unusual situations, typically proof of actual

13

residence can be shown through habitation at the property for a significant period. *See id. C.f. Wiley*, 570 B.R. at 668-73 (considering extrinsic indicators of residence and determining debtors' use of property was as a secondary, rather than primary, place of abode).

Overlaid upon this granular analysis is an overarching public policy that strongly favors preservation of the family dwelling place. *In re Ehnle*, 124 B.R. 361, 363 (Bankr. M.D. Fla. 1991). In keeping with the strong preference of providing a safety net to a debtor's family unit, the party objecting to the claim of homestead status has the burden of showing that the claimant is not entitled to it. *Id.* ("The claim of exemptions carries initially some presumptive validity and it is clear that the burden is on the objecting party to establish with [a] preponderance of the evidence that Debtor in fact is not entitled to the exemptions claimed."). For this reason, any analysis of abandonment of a property claimed as homestead must consider "all of the pertinent facts and circumstances of each individual case." *Marsh v. Hartley*, 109 So.2d 34, 38 (Fla. 2d DCA 1959) (internal citations omitted).

Courts have described abandonment as occurring when the owner leaves the home with no intention of returning, takes up permanent abode at another place, and pursues a livelihood in the new area. *Bennett*, 395 B.R. at 789 (quoting *Barlow v. Barlow*, 23 So.2d 723, 724 (Fla. 1945)). Courts have also held that a homeowner can only "waive" the constitutional homestead exemption through a properly executed mortgage or through abandonment. *Id.* at 789 (internal citation omitted); *Olesky v.*

14

*Nicholas*, 82 So.2d 510, 512 (Fla.1955) ("[W]here a homestead has been acquired it can be waived only by abandonment or by alienation in the manner provided by law."). In the absence of a completed, undisputed transfer of title, the homestead character of a subject property frequently must be determined through fact-based analysis. *See, e.g., Lloyd*, 394 B.R. at 610-12 (evaluating debtor's claim of homestead considering rental of property and debtor's habitation out of state).

For obvious reasons, a debtor will rarely admit to abandonment. *In re Klaiber*, 265 B.R. 290, 292-93 (Bankr. M.D. Fla. 2001). As a result, courts are often left to divine intent from whatever information has been presented by the claimant and the objecting party.

Debtor's unwavering testimony (although not wholly credible) is that he never intended to abandon his homestead. Trustee has not disputed that Debtor occupied the Property for a substantial period prior to the lease with Barros, thereby satisfying the actual residence prong. The only question open for the court's consideration is whether Debtor's actions in leasing the Property to Barros for almost three years, executing a purchase and sale agreement for the Property with Barros, establishing a residence in other locations (including the River Oak Property), failing to maintain the Property's homestead property tax designation, abdicating the responsibilities of a homeowner by failing to pay insurance and taxes, and failing to provide complete and candid disclosure in the Schedules and Statements[19] collectively support a

---

[19] The Debtor's disclosure, where provided, was often inconsistent with and frequently contradicted his

finding that Debtor abandoned the Property. This analysis requires consideration of all aspects of the Property's purported homestead status as of the Petition Date. *In re Bratty,* 202 B.R. 1008, 1010 (Bankr. S.D. Fla. 1996) ("Debtor's expression of his intention is probative, but if an owner acts inconsistently with a self-professed intention to establish homestead, a claim for exemption may fail.") (internal citation omitted); *Lloyd*, 394 B.R. at 610-12 (quoting same); *In re Mohammed*, 376 B.R. 38, 41-42 (Bankr. S.D. Fla. 2007) ("The petition date is the only relevant time period for determining Debtors' entitlement to [the] homestead exemption.").

It is well established under Florida law that a property with homestead status does not lose its constitutional protection merely because the homeowner enters into contract to sell the property. *In re Vick,* Case No. 07-10844-BKC-AJC, 2008 WL 2444526, at *2 (Bankr. S.D. Fla. June 16, 2008) (citations omitted). Courts have held that the protection continues until at least the time of closing and, if the homeowner can demonstrate intent to acquire a new residence within the state, for an extended period beyond the closing date to allow for the transfer of homestead status. *Id.* at *3 (holding that debtor was not required to reinvest proceeds within a fixed period). Similarly, courts have found leasing a residence not to constitute abandonment in a wide variety of circumstances, so long as the debtor retained an intention to return to the residence as the debtor's permanent abode. *See, e.g., Lloyd*, 394 B.R. at 610-13;

---

later testimony at the Evidentiary Hearing regarding the purported homestead character of the Property.

*In re Imprasert*, 86 B.R. 721, 723 (Bankr. M.D. Fla. 1988).

Courts in this state have also found, however, that under certain circumstances, leasing homestead property in whole or in part has resulted in the abandonment of homestead status as to the portion of the property subject to the rental. *In re Nofsinger*, 221 B.R. 1018, 1021 (Bankr. S.D. Fla. 1998) (debtor not entitled to exempt portion of property used for rental purposes); *In re Shillinglaw*, 81 B.R. 138, 140 (Bankr. S.D. Fla. 1987) (Florida constitutional homestead provision inapplicable to portion of property leased to third persons for business use); *In re Frederick*, 183 B.R. 968, 971 (Bankr. M.D. Fla. 1995) (debtor not entitled to homestead exemption when he abandoned property by leasing it for six years, treated it as rental property for tax purposes, and failed to claim Florida homestead exemption); *In re Goode*, 146 B.R. 860, 862 (Bankr. M.D. Fla. 1992) (debtors abandoned homestead by entering into lease, attempting sale to lessee, and failing to reside in premises for over two years, even though debtors' furniture and personal property remained in residence). In each instance, the applicable court reviewed the standard defined above – actual residence plus continuous intent to reside – and found that, under the facts presented, the scale tipped in favor of abandonment. *Id*.

In this case, Debtor's testimony regarding his continued intent to reside within the state of Florida was clear and consistent. That being said, the court generally found Debtor to be an unreliable, evasive, and argumentative witness. By contrast, Barros' testimony was direct and credible, to the extent of her limited knowledge of

the issues relevant to the court's homestead analysis.

For these reasons, the court finds it necessary to weigh all facts in light of the well-accepted premise that the homestead exemption must be liberally construed in favor of the claimant, which includes placing the burden upon the objecting party to make a strong showing that the claimant is not entitled to the claimed exemption. *In re Harrison*, 236 B.R. 784, 786 (Bankr. M.D. Fla. 1999); *Klaiber*, 265 B.R. at 293. Balanced against this liberal construction, however, is the often-repeated caution that the homestead exemption is not intended to permit a debtor to perpetuate a fraud upon creditors. *Brown v. Lewis*, 520 F.Supp. 1114, 1116 (M.D. Fla. 1981) ("[T]he homestead exemption cannot be applied when it would operate as a fraud upon creditors."). With those conflicting parameters in mind, the court finds and holds that Trustee has met the substantial burden of proof that must be overcome to demonstrate abandonment and thereby divest the Property of any prior homestead status.

Debtor's decision to lease the Property while attempting to purchase a new home nearby did not, by itself, provide a basis for abandonment. *Lloyd*, 394 B.R. at 610-14; *Imprasert*, 86 B.R. at 723. Moreover, Debtor's actions in pursuing the purchase of another property within the same county reflects an intent to remain within the State. *C.f. Harrison*, 236 B.R. at 787. Existing case law has unquestionably provided ample precedent for a homeowner to sell homestead property, maintain homestead protection as to the proceeds of the sale, and subsequently purchase a new

18

home using those funds that will then be imbued with homestead status. *Bennett*, 395 B.R. at 789 (citing *Orange Brevard Plumbing & Heating Co. v. La Croix*, 137 So.2d 201, 206 (Fla. 1962)). Case law indicates, however, that a claimant must be able to provide the court with competent evidence of the claimant's continuous intent to maintain homestead status. *Harrison*, 236 B.R. at 788-88 (denying summary judgment to allow for evidentiary hearing as to whether debtor intended to re-use funds to purchase another homestead within the state of Florida).

The court is by no means convinced that Debtor was completely candid in every aspect of his testimony. For this reason, the court finds it necessary to evaluate the factual evidence in exacting detail to discern whether Debtor's actions at any point indicated that he abandoned his intent to permanently reside at the Property. Unfortunately, the parties did not provide the court with many of the typical indicators of intent, i.e. a copy of Debtor's driver's license, voting registration, title to any of Debtor's vehicles or vessels, or other similar well-accepted indicators of residence. *Lloyd*, 394 B.R. at 612. Trustee did, however, introduce Debtor's property tax records into evidence, and it is this documentary evidence, when combined with Debtor's prolonged lease of the Property, Debtor's willingness to continue the lease of the Property even after the Petition Date, and Debtor's relocation to the River Oak Property, that the court finds most probative of Debtor's intent to abandon the Property as his homestead.

It is undisputed that Debtor let the property tax homestead exemption lapse

for the 2016 and 2017 tax years. Regardless of the underlying basis for the omission, the court finds that Debtor's *laissez-faire* attitude with respect to the tax burdens associated with ownership of the Property speaks volumes. Debtor's failure to insure the Property or to pay real property taxes accrued on the Property, Debtor's extended lease to Barros, and Debtor's lack of complete and candid disclosure on the Schedules and Statements are all indicative of Debtor's true intent with respect to the Property.

Although Debtor testified that he sought to minimize his finances by allowing Barros to remain in the Property (thereby avoiding the necessity of refunding the substantial amount of funds she advanced), he offered no cogent explanation for his willingness to let an important tax benefit lapse other than his apparent desire to let the bank front the entire property tax burden of ownership until the conclusion of the pending foreclosure action. *See* Transcript 134:4-135:15. In addition, Debtor not only allowed Barros to reside in the Property for at least two-and-a-half years prior to the Petition Date, but also offered her an extension to the (already quite lengthy) lease of the Property. *See* Trustee's Exhibit 5 ("As Is" Residential Contract for Sale and Purchase, dated September 17, 2016), at §20. In addition, Barros' testimony that, shortly after the Petition Date in January 2018, Debtor offered to further extend her lease if she was willing to pay him either $48,000 or at least $24,000 is indicative of Debtor's view of the Property as merely an income-producing property. Debtor's relocation to the River Oak Property, his willingness to reside away from the Property well beyond the original lease term, his failure to maintain the homestead property

tax exemption or to pay insurance and taxes for the Property, and lack of complete disclosure on the Schedules and Statements simply do not support his testimony that his intent to return to the Property remained continuous throughout his many residential transitions.

Based on the record evidence submitted, the court therefore finds and holds that the facts and circumstances presented do not collectively indicate that Debtor maintained a continuous intent to reside at the Property. Accordingly, the court determines that Trustee has met the required burden of proof to demonstrate Debtor's abandonment of the Property, and the court will sustain Trustee's Objection.

## CONCLUSION

Accordingly, the court, having considered the Objection and the Memorandum, having considered the arguments of counsel at the Evidentiary Hearing, having reviewed the record and all exhibits submitted by counsel, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. The Objection is **SUSTAINED**.

2. The Property located at 1111 SW 18th Street, Boca Raton, FL 33486 was not the homestead of Debtor on the Petition Date, and Debtor is not entitled to any claimed exemption of the Property as homestead.

3. The Property is a non-exempt asset of Debtor's estate, which Trustee may administer for the benefit of Debtor's estate.

4. The court reserves jurisdiction to determine all matters arising from or

relating to the implementation of this Order.

### ###

Copy furnished to:

Michael Bakst, Esq.
Counsel to Trustee

*Attorney Bakst is directed to immediately serve a copy of this order upon all parties and file a certificate of service.*